IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02754-MEH

TAVORRIS GARRETT,

    Plaintiff,

v.

FINANCIAL BUSINESS AND CONSUMER SOLUTIONS, INC.,

    Defendant.

___

## ORDER
___

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff owes a creditor, Capital One N.A., for an outstanding balance on a department store credit card. ECF 1 at ¶¶ 21–24. Capital One N.A. hired Defendant to collect the debt from Plaintiff. *Id*. at ¶ 25. Plaintiff argues that the debt collection letter that Defendant sent him violates the Fair Debt Collection Practices Act ("FDCPA") in two respects. First, it constitutes a false and misleading representation in the collection of a debt, in violation of 15 U.S.C. § 1692e(10). Second, it overshadows and contradicts the required § 1692g disclosure. Before the Court is Defendant's Motion for Summary Judgment. ECF 18. The Motion is ripe for review, and the Court finds that oral argument will not materially assist in its adjudication. For the reasons that follow, the Motion is granted.

## UNDISPUTED MATERIAL FACTS

1.    The debt collection letter is dated May 5, 2020. ECF 1-1.

2.    The first page of the letter states:

> Your account has been referred to this office for collection.
>
> We are requesting payment in full on the account referenced above.
>
> If you are unable to pay in full, contact our office to speak to one of our agents as we may have other payment options that are available to you.
>
> CALLING FOR FURTHER INFORMATION OR MAKING A PAYMENT IS NOT A SUBSTITUTE FOR DISPUTING THE DEBT.

*Id*.

3. At the bottom of the first page, the letter says to "SEE PAGE 2 FOR IMPORTANT DISCLOSURES." *Id*. In other words, the letter instructed Plaintiff to turn the letter over for additional information. The second page contains the required Section 1692g disclosures, informing Plaintiff that:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that the debt or any portion thereof is disputed, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor.

*Id*.

4. Plaintiff submits no evidence that he disputed the debt (ECF 18 at 3, n.2), and he admits that he did not do so (ECF 21 at 4, ¶ 4).

5. Plaintiff did not request in writing verification of the debt.

6. He did not request in writing the name and address of the original creditor.

7. He does not deny owing the debt.

8. Plaintiff filed this lawsuit on September 11, 2020. ECF 1.

## ANALYSIS

Defendant seeks summary judgment on the basis of two legal arguments. It contends that Plaintiff lacks standing to sue it, but even if subject matter jurisdiction exists, Defendant furthers that he has insufficient evidence to prove a FDCPA violation to prevail on the merits.

### I.   Article III Standing

Defendant says Plaintiff lacks Article III standing because he pleads insufficient injury. ECF 18 at 8. In response, Plaintiff asserts that (1) he did suffer a tangible harm constituting injury-in-fact and (2) the Section 1692e and 1692e(10) violations constitute *de facto* injury of substantive rights. ECF 21 at 5. The Court disagrees that he incurred a tangible harm, but even so, FDCPA confers substantive rights from which injury could arise.

One way for Plaintiff to establish Article III standing is to allege (1) he suffered an injury-in-fact, (2) the injury was fairly traceable to Defendant's conduct, and (3) a favorable decision from this Court would redress the injury. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury qualifies for standing if Plaintiff can demonstrate (1) an invasion of a legally protected interest that is (2) concrete and particularized and (3) actual or imminent, not conjectural or hypothetical. *Id.* at 1548. Statutory provisions may not substitute for injury. "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48. Plaintiff still must meet the elements required to establish an injury-in-fact. However, statutory rights may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992)).

For an injury to be concrete, it must actually exist, rather than be abstract. *Id.* However, an injury does not have to be tangible to be concrete; intangible injuries may still suffice for Article III purposes. *Id.* Whether an intangible injury is sufficiently concrete turns on two factors. First, due deference should be given to congressional intent because Congress is "well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* Second, a court considers whether the right has historical footing in common-law and "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." *Id.*

### A.     Plaintiff's Injury Does Not Rise to the Level of Tangible Harm.

Plaintiff argues that he did suffer a tangible harm, the primary form of injury-in-fact. Certain injuries readily and easily satisfy Article III standing, "[t]he most obvious [of which] are traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Tangible injuries are the most concrete; they are easily demonstrable and identifiable. Plaintiff argues the violation "caused him not to pay the debt," which constitutes a tangible harm. ECF 21 at 7. Nowhere does Plaintiff direct the Court to a material loss such as a fee, increased interest rate, or any quantifiable monetary damages. He does not explain how his position has changed. He owes the same debt that existed before he received the letter. Therefore, the Court does not find Plaintiff's injuries rise to the level of a tangible harm.

Plaintiff also alleges he "lost out on the ability to make payments, therefore reducing [his] debt and the imposition of future interest, needlessly incurred the risk of further collecting fees and interest, and lost out on the ability to negotiate a separate payment plan offered in the Letter." *Id.* at 6. The Supreme Court defines "concrete" by the usual meaning of the term with its

4

emphasis on "real" rather than "abstract" qualities. *Spokeo*, 136 S. Ct. at 1548. Without statutory elevation, they are insufficiently concrete to establish injury. Plaintiff's risks of harm are too abstract and speculative to qualify as an injury under the traditional standard of Article III.

### B.     Sections 1692e and 1692g Confer Substantive Rights.

Having determined Plaintiff incurred no tangible harm, the Court addresses whether the statute provides a substantive right as an alternative. *Id.* at 1549. The standard of injury set in *Spokeo* regarded only procedural rights. *Id.*; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."). However, violations of substantive rights, by their very nature, present a material risk of harm and establish *de facto* injury. *Zuniga v. TrueAccord*, No. CV 18-683 KG/KRS, 2020 WL 2840318, at *5 (D.N.M. June 1, 2020). Therefore, the Court must discern whether the rights granted under Sections 1692e or 1692g, respectively, are procedural or substantive in nature. In neither instance has the Tenth Circuit spoken dispositively on the issue.

Turning to Section 1692e, the great majority of federal courts have answered the question in the affirmative. *Id.* District courts in the Tenth Circuit consistently have held that Section 1692e creates a substantive right. *Cooper v. Stephen Bruce & Assocs.*, No. CIV-18-487-R, 2019 WL 97826, at *4 (W.D. Okla. Jan. 3, 2019)*; Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1236 (D. Colo. 2016). Section 1692e's purpose is "to eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Tenth Circuit district courts have construed this to be a substantive right "ensuring [consumers] are free from abusive debt collection practices" and receive "truthful and fair disclosures." *Rodriguez v. Cascade Collections LLC*, — F. Supp. 2d —,

2021 WL 1222147, at *4 (D. Utah Mar. 31, 2021); *Zuniga*, 2020 WL 2840318 at *6. Other Circuits agree. *St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351, 357-58 (3rd Cir. 2018); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 757 (6th Cir. 2018); *Cohen v. Rosicki, Rosicki & Assocs.*, *P.C.*, 897 F.3d 75, 81 (2nd Cir. 2018); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994-95, n.2 (11th Cir. 2016). *But see Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (holding that a plaintiff must show how the statutory violations caused concrete injury in some way).

Following the weight of Tenth Circuit district court opinion, the Court finds that Plaintiff has standing to bring a Section 1692e violation claim. The same result cannot be reached with respect to the Section 1692g violation, which is considered procedural in nature. *Rodriguez*, 2021 WL 1222147 at *8; *Cooper*, 2019 WL 97826 at *10 (W.D. Okla. Jan. 3, 2019). Therefore, Plaintiff lacks standing for his Section 1692g claim.

## II.   FDCPA

At issue are Sections 1692e and 1692g of the FDCPA, which prohibit "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and any communications which may overshadow or be inconsistent with the disclosure of the consumer's rights, respectively. 15 U.S.C. §§ 1692e and 1692g. Subsection 1692e(10) makes the "use of any false representation or deceptive means to collect or attempt to collect any debt" unlawful. Subsection 1692g(b) provides consumers the right to dispute the validity of a debt within thirty days of receiving notice before it is presumed valid.

Plaintiff claims that Defendant violated both provisions. First, Plaintiff claims the statement, "CALLING FOR FURTHER INFORMATION OR MAKING A PAYMENT IS NOT A SUBSTITUTE FOR DISPUTING THE DEBT," (the disputed "Language" in this lawsuit), is

6

false or misleading under Section 1682e. It implies that disputing a debt is mandatory, rather than optional, he argues. Second, Plaintiff claims that the Language overshadowed the required disclosure on the second page of the letter, and inconsistently suggested that disputing the debt was mutually exclusive to making a payment, in violation of Section 1692g.

Disclosures are evaluated under the "least sophisticated consumer" test. *Deporter v. Credit Bureau of Carbon Cty.*, No. 14-cv-00882, 2015 WL 1932336, at *3 (D. Colo. April 28, 2015) ("The Tenth Circuit has not expressly adopted this standard, but it has, in an unpublished opinion, 'applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector'") (citing *Ferree v. Marianos*, 129 F.3d 130 (10th Cir. 1997)). The Tenth Circuit also utilized the least sophisticated consumer test in *Fouts v. Express Recovery Servs.*, 602 F. App'x 417, 421 (10th Cir. 2015).

A debt collection letter is considered by how the least sophisticated consumer would read it. Such a consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Ferree*, 129 F.3d at 1 (citing *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). "The least sophisticated consumer standard ensures protection to all consumers, even the naïve and trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic interpretations of collections notices." *Hudspeth v. Capital Mgmt. Servs., L.P.*, No. 11-cv-03148-PAB-MEH, 2013 WL 674019, at *4 (D. Colo. Feb. 25, 2013) (internal quotations omitted).

As applied to Sections 1692e and 1692e(10), "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Lucero v. Bureau of Collection Recovery, Inc.*, No 09-cv-0532-JB-WDS, 2012 WL 681797, at *12 (D.N.M. Feb. 28, 2012). "[A] false statement is material if it would impact the least sophisticated

7

consumer's decisions with respect to the debt." *Deporter*, 2015 WL 1932336 at *8. In regard to Section 1692g, "[t]he debt collector's communications may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . . A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Hamilton*, 237 F. Supp. 3d at 1113.

The requirements of the FDCPA and the least sophisticated consumer test boil down to the standard that debt collectors may not make statements which would suggest to a naïve or gullible consumer anything misleading, contradictory, or false about his or her rights. By comparison, bizarre or unique interpretations of language which cause the consumer to believe something incorrect about, or contrary to, his or her rights do not create FDCPA liability.

**III.   The Letter Does Not Violate FDCPA Requirements.**

Because Defendant moves for summary judgment, the burden is on Plaintiff, as the non-moving party, to show a dispute of a material fact, and to explain why the law does not require summary judgment in Defendant's favor. Plaintiff fails to meet this burden. Plaintiff claims that the Language, "CALLING FOR FURTHER INFORMATION OR MAKING A PAYMENT IS NOT A SUBSTITUTE FOR DISPUTING THE DEBT," is false or misleading under Section 1682e, because it implies that disputing the debt is mandatory, rather than optional. He furthers that the Language overshadows the required disclosure on the second page of the letter. Lastly, he reads the letter to suggest that disputing the debt is mutually exclusive to making a payment, which would be inconsistent with his Section 1692g rights.

Plaintiff's reading only can be reached by inserting additional language into the letter, something which the Court may not do. The Language serves the helpful purpose to avoid confusion about whether making a payment (possibly, a payment that is less than the full amount

8

of the debt owed, but for the full amount of the debt in the consumer's mind) can substitute for a dispute of the debt's validity. The interpretation of that Language that Plaintiff extracts would be "bizarre" or idiosyncratic under the governing standard.

### A. The Language Does Not Suggest That Disputing a Debt Is Required.

Plaintiff's primary argument is that the Language implies an *obligation* to make a dispute. The Court agrees that such a mandatory requirement would violate the FDCPA. However, it is unclear how Plaintiff arrives at his interpretation. He cites no authority in support. The case law he cites only goes so far as to state the general rule that requiring a dispute violates the FDCPA, but those cases shed no light on the interpretation of the letter itself.

In defense of his interpretation, Plaintiff asserts that "[b]y stating that calling Defendant FBCS or making a payment on the debt is not a substitute for disputing the debt, the letter specifically distinguishes the two and therefore suggests to the least sophisticated consumer that disputing a debt is mandatory." ECF 21 at 28. However, the proposition is illogical. The most basic reduction of Plaintiff's argument is that any statement consisting of "(A) does not amount to (B)" somehow implies that (B) is mandatory. Such a conclusion is "bizarre," and the least sophisticated consumer would not reach that understanding. Even Plaintiff did not construe it as such. He did not dispute the debt, despite reading wording that supposedly mandated him to do so.

Plaintiff cites *DeCapri v. Law Offices of Shaprio Brown & Alt, LLP*, No 3:14-cv-201-HEH, 2014 WL 4699591 (E.D.Va. Sep. 19, 2014) as an example of a similar interpretation. However, that case dealt with language that was clearly inconsistent with a consumer's rights. It stated that "[t]he [FDCPA] entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this letter . . . If you choose to dispute the debt, . . . you *must* notify

9

us within thirty (30) days." (emphasis added). *Id*. at *2. This is plainly inconsistent with the rights afforded to a consumer under the FDCPA, which is that a debt may be disputed at any time, and one need only dispute the debt within thirty days to prevent the debt collector from assuming the debt's validity.

No such plain inconsistency exists in the letter that Plaintiff received, particularly against the disclosures on the second page of the letter, to which an instruction in all capital letters directed him. The least sophisticated consumer is expected to read a letter in full, and doing so in this case would have provided Plaintiff with an accurate, uncontradicted disclosure of his dispute rights.

Plaintiff claims that the paragraph preceding the Language, which details the process by which he may make a payment, or set up a payment plan, provides context supportive of his interpretation. However, this explanation lacks substance, and Plaintiff makes no link between describing payment options and mandating a dispute process. Plaintiff's interpretation is too attenuated, illogical, and "bizarre" to create liability.

### B.   The Language Does Not Suggest Mutual Exclusivity.

Plaintiff reads an implication of mutual exclusivity from the Language which is directly opposite from its expressed and obvious meaning. As Defendant points out, "[t]he challenged language . . . clearly states if you want to dispute the debt, calling and asking for additional information or making a payment does not replace the right to dispute the debt." The Court agrees with Defendant's reading.

Plaintiff claims that the statement, "MAKING A PAYMENT IS NOT A SUBSTITUTE FOR DISPUTING THE DEBT," juxtaposes making a payment and disputing the debt in such a way as to imply mutual exclusivity. However, it is one thing to say that making a payment and

10

disputing a debt are different, and another entirely to suggest that they are mutually exclusive. The phrase, "IS NOT A SUBSTITUTE FOR," does not carry any reasonable implication of exclusivity, and in fact demonstrates, when read in full context, that Defendant is informing Plaintiff that making a payment does *not* take the place of disputing the debt. In other words, *both* can be pursued without exclusivity. Plaintiff would take the plain meaning of, "IS NOT A SUBSTITTUE FOR," and replace it with "PRECLUDES."

Plaintiff cites no binding case law that suggests such a meaning is what the least sophisticated consumer would believe, nor does he offer even a single example situation or sentence in which the Language would mean what he suggests. To survive summary judgment, the burden is on him to point to disputed material facts or to law contrary to Defendant's position. Plaintiff does not meet his burden.

### C.     The Language Does Not Overshadow the Disclosure of Plaintiff's Rights.

Flowing from his other arguments, Plaintiff argues that the Language overshadows the disclosure of his rights and creates confusion as to his decisions to pay the debt. "A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Hamilton*, 237 F. Supp. 3d at 1113. Because the Language is not misleading nor contrary to any of his rights, it does not overshadow the proper disclosure on the second page of the letter. Plaintiff was directed to these disclosures by a statement in all capital letters at the bottom of the first page stating, "SEE PAGE 2 FOR IMPORTANT DISCLOSURES." There, Plaintiff was informed of his right (but not an obligation) to dispute the debt or else Defendant may assume its validity.

While the format of the Language included an offset and capitalized letters, the second-page disclosures are presented with equal emphasis. Furthermore, the Language is not

11

misleading or inaccurate. There is no support for an interpretation of the Language that would give the least sophisticated consumer any uncertainty regarding his or her rights. Therefore, the Court does not find the Language to overshadow or contradict the second-page disclosures in any way that violates the FDCPA.

## CONCLUSION

Even if Plaintiff potentially could have standing to bring this lawsuit, he does not show an actual FDCPA violation. The Court does not find the debt collection letter to be misleading. To the contrary, the letter conveyed to the least sophisticated consumer the subject FDCPA rights accurately.

Accordingly, Defendant's Motion for Summary Judgment [filed May 28, 2021; ECF 18] is **granted**. Summary judgment is entered against all of Plaintiff's claims for relief. The Clerk of Court shall enter Final Judgment in Defendant's favor and close this civil action. The Final Pre-Trial Conference currently set for September 9, 2021 is **vacated**.

Entered this 23rd day of August, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge